**Nos. 13-55859, 13-55871, 13-55880, 13-55881, 13-55882, 13-55883,
13-55884 & 13-56028**

_____

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

INGENUITY 13, LLC,

Plaintiff-Appellant,

v.

John Doe,

Defendant-Appellee,

v.

AF HOLDINGS, LLC; PRENDA LAW, INC.; PAUL DUFFY, ESQ.; PAUL
HANSMEIER, ESQ.; and JOHN STEELE, ESQ,

Additional Appellants.

_____

**REPLY BRIEF FOR APPELLANTS
INGENUITY 13, LLC; AF HOLDINGS, LLC; PRENDA LAW, INC.;
PAUL DUFFY, ESQ.; PAUL HANSMEIER, ESQ.; and JOHN STEELE, ESQ.**

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
U.S.D.C. No. 2:12-cv-08333-ODW-JC
THE HONORABLE OTIS D. WRIGHT II

_____

DANIEL J. VOELKER, ESQ.
Voelker Litigation Group
311 West Superior Street
Suite 500
Chicago, Illinois 60654
312-870-5430
*Attorney for Plaintiff-Appellant and
Certain Additional Appellants.*

## <u>TABLE OF CONTENTS</u>

<u>SECTION</u>                                    <u>PAGE NO.</u>

**ARGUMENT** ..............................................................................1

**I.    SHORT OF RE-WRITING CRIMINAL DUE PROCESS CASE LAW, THERE IS NO BASIS UPON WHICH THE DISTRICT COURT'S SANCTIONS CAN BE AFFIRMED** .........3

    **A.    Under this Court's Prior Case Law, Appellee Cannot Justify the District Court's Imposition of Criminal Sanctions under Its Inherent Authority by Relying on Rule 11 or Bankruptcy Rule 9011(c)(2) Case Law.** ...............6

    **B.    Appellee's Request that the Case Be Remanded so that He Can Argue for Rule 11 Sanctions Ignores the Language of Rule 11 and Appellate Procedure.** ...................9

    **C.    There Is Neither Precedent Nor Logic Supporting Appellee's Suggestion that the District Court's Doubling of Attorneys' fees Can Be Sustained as a Lodestar Enhancement** ............................................10

    **D.    Because of the Procedural Posture of this Case, Appellee's Request that the Court Award the Compensatory Portion of Its Sanctions Is Improper** .........12

**II.    IN ATTEMPTING TO DEFEND THE DISTRICT COURT'S EXTENSION OF ITS INHERENT AUTHORITY TO THE INDIVIDUAL APPELLANTS, APPELLEE *COMPLETELY AND TOTALLY* MISSTATES THE HOLDING IN *HELMAC*** ......................................15

    **A.    *Helmac* Is Not Limited to Cases in which the Sanctioned Party Is Beyond the Court's Personal Jurisdiction.** .............................................................16

    **B.    Under the *Helmac* Test, the Court's Inherent Authority Does Not Extend to the Individual Appellants.** .............................................................19

i

III.    APPELLEE'S REQUEST FOR FEES INCURRED IN
        PURSUING SANCTIONS AND IN DEFENDING
        SANCTIONS ON APPEAL WOULD REQUIRE THIS
        COURT TO LITERALLY RE-WRITE ITS PRIOR
        HOLDINGS ....................................................................23

IV.     APPELLEE'S ADDITIONAL FACTUAL ASSERTIONS
        HAVE NO RELEVANCE TO THIS CASE AND ARE
        LARGELY UNSUPPORTED BY THE RECORD ON
        APPEAL.........................................................................27

        A.    Appellee's Additional Assertions Are Unrelated to
              Either the Alleged Reasons for the Sanctions Imposed
              Or to the Issues in this Appeal..............................28

        B.    Many of Appellee's Most Egregious Assertions Are
              Unsupported by Valid Citations to the Record on
              Appeal ....................................................................29

CONCLUSION ......................................................................31

CERTIFICATE OF COMPLIANCE .................................................33

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                      **PAGE NO.**

*Anz Advanced Techs., LLC v. Bush Hog*, LLC,
    2012 U.S. Dist. LEXIS 29534 (S.D. Ala.)..........................................................18

*Bartos v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.) ........................18

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) .....................................17-18 & 25-26

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)...........................................7

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987)................................................7

*Eisenberg v. University of New Mexico*, 936 F.2d 1131 (10th Cir. 1991) ...............7

*F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*,
    244 F.3d 1128 (9th Cir. 2001) ........................................................4-5, 9 & 11-15

*Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir. 1988) ...........12

*Franz v. U.S. Powerlifting Federation*, 836 F.2d 1063 (7th Cir. 1987) ...................7

*Grine v. Chambers*, 439 B.R. 461 (Bankr. N.D. Ohio 2010) ........................ 24 & 25

*Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th
    Cir. 1996)...........................................................................................................12

*Helmac Products Corp. v. Roth Plastics, Corp.*,
    150 F.R.D. 563 (E.D. Mich. 1993) ............................................................. 15-19

*Hudson v. Moore Business Forms, Inc.*, 898 F.2d 684 (9th Cir. 1990).....................7

*In re DeVille*, 280 B.R. 483 (9th Cir. B.A.P. 2002) ............................................. 7-9

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) ...............................................................8

*Kirshner v. Uniden Corp. of America*, 842 F.2d 1074 (9th Cir. 1988) ..................21

*Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir. 1992) .............................23-24 & 26-27

*Mackler Products v. Cohen*, 146 F.3d 126 (2d Cir. 1998) ............................... 7 & 8

*Orange Blossom Limited Partnership v. Southern California Sunbelt
    Developers, Inc.*, 608 F.3d 456 (9th Cir. 2010)........................................... 23-27

Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399 (1923) ................ 25 & 26

*United States v. Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.) ............. 17 & 18

*United States v. Searcy*, 284 F.3d 938, 943 (8th Cir. 2002) ....................................12

**Statutes**

U.S. Constitution, Fifth Amendment........................................................ 11 & 13-14

Bankruptcy Act, 11 U.S.C. § 303 ..................................................................... 23-26

Bankruptcy Rule 9011 ...................................................................................... 6 & 7

Fed. Rule Civ. Proc.  11............................................................................. 6-10 & 24

# ARGUMENT[1]

It appears that Appellee's counsel does not have a clear understanding of appellate practice.  This is an appeal from two orders that imposed sanctions and an excessive supersedeas bond requirement on Appellants.  Appellee's counsel devotes the largest portion of the Response to adding unsubstantiated factual assertions that are intended to vilify Appellants for using the copyright laws to vindicate Plaintiffs' rights in several adult films that were improperly downloaded over the internet.  However, Appellants were not sanctioned for filing these lawsuits.

The District Court imposed sanctions on the Appellants for:  (a) alleged misrepresentations made by Brett Gibbs ("Gibbs") regarding the size of a house and a non-essential signature on a copyright assignment; and (b) Gibbs' alleged violation of a discovery order.  Neither the District Court, nor Appellee, contests the fact that Plaintiffs held protectable interests in these films or that they were entitled to protect those interests.

---

[1] For consistency, Appellants adopt the same citation references as those used in their Opening Brief.  (Applt. Br. at 1, n.1.)  In addition, Appellants' Opening Brief will be cited as "Applt. Br. at __."  Appellee's Answering Brief will be referred to as the "Response" and will be cited as "Resp. at ___".  Appellee, John Doe's, Supplemental Excerpts of the Record will be cited as "Doe Supp. ER__"; Appellants' Supplement Excerpts of Record will be cited as "Applt. Supp. ER__"; and Federal Rule of Civil Procedure 11 will be referred to as "Rule 11".

In addition to being irrelevant, a number of Appellee's additional factual assertions are supported by nothing more than a citation to his counsel's oral argument to the District Court. Other assertions are solely supported by citation to unauthenticated documents that are not part of the record on appeal. In one critical instance, Appellee cites to an email exchange in a Georgia proceeding, but fails to cite a repudiating affidavit submitted in the instant case by the email's author.

There is a heavy sense of irony to the litigation over these sanctions. Gibbs was AF Holdings' and Ingenuity 13's sole counsel in the five consolidated cases. Any representations made to the District Court were made by Gibbs himself. In fact, Gibbs was the sole target of the District Court's initial Show Cause Order.

In the time period since these appeals were filed, the District Court has amended its Sanctions Order to exclude Gibbs. Thus, the sanctioned conduct was directly performed by the one person who has been dismissed. What remains is a Sanctions Order against the parties whom Gibbs represented and against three individual Appellants whose only nexus to the five consolidated cases is Gibbs' own testimony, untested by cross-examination, that two of these individuals directed or supervised his conduct.

Forty-four pages into the Response, when Appellee first actually addresses the issues raised in Appellants' Opening Brief, Appellee's counsel cites, and even quotes, much of the same case law as in Appellants' opening brief, but asks the Court to depart from its prior holdings, again, citing to documents and transcripts that are not part of the record on appeal.

Appellee's Response does literally nothing to dispel Appellants' demonstration that the District Court: violated procedural due process requirements; improperly extended its inherent authority to the individual Appellants who had never appeared in any of the consolidated cases; and imposed sanctions that included non-compensable attorneys' fees.

Appellee's request that this Court abandon its prior case law demonstrates that affirming the District Court's sanctions and bond orders would require a sea-change in case law of both the Supreme Court and of this Court regarding the rights of persons subjected to criminal sanctions and the extent of a District Court's inherent authority.

## I.    SHORT OF RE-WRITING CRIMINAL DUE PROCESS CASE LAW, THERE IS NO BASIS UPON WHICH THE DISTRICT COURT'S SANCTIONS CAN BE AFFIRMED.

Of the various errors asserted in this Appeal, the District Court's imposition of criminal sanctions without the Constitutionally-mandated

procedural safeguards has the broadest policy implications. (Applt. Br. at 37-53.)

Appellants' argument (Applt. Br. at 37-53) can be summed up quite succinctly in four sentences:

1. Under this Court's prior decisions, the monetary sanction imposed by the District Court was a criminal sanction. (Applt. Br. at 38-42.)

2. A District Court can impose a criminal sanction under its inherent powers only after affording the party being sanctioned the criminal due process rights that are required in a criminal contempt proceeding. (*Id.* at 42-43.)

3. In a criminal contempt proceeding, procedural due process requirements prohibit the court from drawing adverse inferences from a defendant's decision not to testify and require: the appointment of an impartial prosecutor; the right to cross-examine witnesses; and the right to present a defense and call witnesses. (*Id.* at 44-53.)

4. The District Court provided none of these due process protections. (*Id.*)

For the most part, the parties are in agreement as to all but the first of these four points. Both parties cite the very same language in *F.J. Hanshaw Enterprises v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001) in which this Court has described the procedural due process protections that must be given to a party before a District Court can impose criminal sanctions. (*Compare* Applt. Br. at 43 with Resp. at 50.) Indeed, Appellee states:

> The *Hanshaw* court held that before a fine that is "criminal in nature" may be imposed, the sanctioned party must be afforded the same due process available in a criminal contempt proceeding. *Hanshaw*, 244 F.3d at 1139. The court explained that this includes: (i) an independent prosecutor, (ii) jury trial, and (iii) reasonable-doubt standard of proof. *Id.* at 1140–42.

(Resp. at 50.)

Further, Appellee does not deny that the District Court failed to observe these procedures. The District Court admitted as much, asserting that its only procedural obligation was to provide notice and an opportunity to be heard. (ER194.)

However, Appellants and Appellee disagree whether the monetary sanctions imposed by the District Court were criminal in nature. Even here, the area of disagreement is narrow. Appellee does not attempt to distinguish the case law which holds that a sanction that is neither compensatory nor coercive is criminal in nature. (Applt.'s Br. at 39-42.) Nor does Appellee address Appellants' rather obvious assertion that a sanction set at twice the amount of total attorneys' fees incurred (including non-compensable fees) and imposed after the consolidated cases have been dismissed cannot possibly be either compensatory or coercive. (*Id.* at 40-41.)

Appellee even asserts that, under Ninth Circuit case law, a District Court cannot award punitive sanctions "absent criminal due process protections". (Resp. at 69.) However, Appellee asks this Court to depart

from its prior decisions and hold that a District Court, under its inherent authority, may impose criminal sanctions, without observing criminal due process protections, so long as the sanction was intended to deter future conduct.  (Resp. at 62-69.)

Alternatively, Appellee asks that, if these sanctions cannot be sustained under the District Court's inherent authority, this Court justify the doubling of actual attorneys' fees as a lodestar enhancement of the actual fees (*id.* at 77-78) or remand the matter to the District Court so that Appellee can justify the sanctions under Rule 11 (*id.* at 64-75.)

And, as an ultimate fallback, Appellee suggests that this Court at least award him his actual attorneys' fees (including non-compensable fees) – without imposing the multiple.  (*Id.* at 50-51.)

As discussed below, each of these arguments suffers from its own unique infirmity.

**A. Appellee Cannot Justify the District Court's Imposition of Criminal Sanctions under Its Inherent Authority by Relying on Rule 11 or Bankruptcy Rule 9011(c)(2) Case Law.**

Citing or quoting eight cases, Appellee asks this Court to hold, for the first time, that a district court, under its inherent authority, can impose punitive sanctions without observing due process requirements, so long as the sanctions are intended to have a deterrent effect.  (Resp. at 63-69.)  Five

6

of these cases deal exclusively with sanctions under Rule 11, or Bankruptcy Rule 9011(c)(2), rather than a court's inherent authority.[2]  (Resp. at 63-67.)

Appellee, on his own, torpedoes the relevance of these five cases. After observing that *In re DeVille* allowed the imposition of a penal sanction under Bankruptcy Rule 9011(c)(2) without conducting criminal contempt proceedings, Appellee states:

> [I]n *DeVille*, the bankruptcy appellate panel read *Mackler Prods.* and *Chambers* as suggesting that deterrent penalties are not allowed as a matter of the court's inherent authority, absent observance of criminal due process protections.

(Resp. at 66.)   Appellants could not have stated it any better.

Moreover, in citing to *In re DeVille*, Appellee states that "[Rule 9011] is a materially identical parallel of Fed. R. Civ. P. 11."  (Resp. at 65, n.26.) Thus, the imposition of penal sanctions under a court's inherent authority without providing criminal due process protections cannot be justified by case law decided under Bankruptcy Rule 9011(c) or Rule 11.

The three cases cited by Appellees that actually involve the imposition of punitive sanctions under a court's inherent authority reject Appellee's

---

[2] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987); *Eisenberg v. University of New Mexico*, 936 F.2d 1131 (10th Cir. 1991); *Franz v. U.S. Powerlifting Federation*, 836 F.2d 1063 (7th Cir. 1987); and *Hudson v. Moore Business Forms, Inc.*, 898 F.2d 684 (9th Cir. 1990)

argument.[3]  Each of the three cases reversed the lower court's imposition of punitive sanctions under its inherent authority without observing criminal due process protections.

The rationale for requiring a court to provide criminal due process protections when imposing punitive sanctions was well expressed in *Mackler*, in which the Court stated:

> [S]anctions and contempts raise certain similar concerns. Whether or not a finding of contempt is involved, unfairness and abuse are possible, especially if courts were to operate without any framework of rules or cap on their power to punish. In either case, the individual bears the risk of substantial punishment by reason of obstructive or disobedient conduct, as well as of vindictive pursuit by an offended judge. We conclude, notwithstanding the differences mentioned above, that the imposition of a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case.

146 F.3d at 130.

As Appellee states in his Response, this Court expressly agreed with *Meckler* in its decision in *Hanshaw*.  (244 F.3d at 1139; see Resp. at 62.) While the punitive sanction in *Meckler* was only $10,000, the punitive portion of the sanction in the instant case was $40,659.86 (ignoring the fact that a large portion of these attorneys' fees are non-compensable).  (ER28.)

---

[3] *In re DeVille*, 280 B.R. 483 (9th Cir. B.A.P. 2002); *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003); *Mackler Products v. Cohen*, 146 F.3d 126 (2d Cir. 1998).

While Appellee states that the Supreme Court has not held that, under a court's inherent authority, it may issue sanctions that are compensatory or coercive, but not deterrent (Resp. at 70), this Court has specifically made such a holding. *In re DeVille*, 280 B.R. at 497-98. Appellee cannot cite, and Appellants are unaware, of a single case from this Circuit, or any other Circuit, holding that a District Court, under its inherent authority, can impose a punitive sanction without observing criminal Due Process protections, regardless of whether the professed motive is deterrence.

### B. Appellee's Request that the Case Be Remanded so that He Can Argue for Rule 11 Sanctions Is a Nullity.

As an alternative, Appellee asks that, if this Court does not affirm the District Court's sanctions, the case be remanded so that Appellee can file a brand new Rule 11 motion. (Resp. at 77-78.) This suggestion suffers from multiple infirmities.

First, it should be emphasized that Appellee has never filed a motion for sanctions. The District Court issued its two show-cause orders *sua sponte*. Under Rule 11(c)(5)(B), a court cannot impose monetary sanctions on its own unless it issued a show-cause order prior to a voluntary dismissal of the case.

9

In the instant case, the two show-cause orders were issued on February 7, 2013, and March 14, 2013 (ER1 & ER16.)   The five consolidated cases were voluntarily dismissed on or before January 29, 2013.  (ER153, ER155, ER158, ER161 & ER164.)  Thus, under the very wording of Rule 11, the District Court could not issue monetary sanctions. The District Court acknowledged this fact in its Sanctions Order.[4]  (ER25.)

Further, Rule 11(b), by its terms, only applies to an attorney or unrepresented party who has "present[ed] to the court a pleading, written motion, or other paper signing [by] filing, submitting, or later advocating it". The only person who signed any document submitted to the District Court was Brett Gibbs.  Thus, in addition to being untimely, Rule 11 does not apply to any of the Appellants, rendering Appellee's suggestion a pure nullity.

## C.   There Is Neither Precedent Nor Logic Supporting Appellee's Suggestion that the District Court's Doubling of Attorneys' fees Can Be Sustained as a Lodestar Enhancement.

Appellee also suggests that, if the District Court's doubling of attorneys' fees cannot be sustained due to the failure to accord Appellants

---

[4] For some reason, Appellee thinks that it is of some relevance that he had contemplated a sanctions motion prior to Appellants' Notice of Appeal. (Resp. at 77.)  Rule 11 is quite specific.  If the Court imposes Rule 11 sanctions on its own, the only relevant dates are those of the show-cause order(s) and the date of the voluntary dismissal.

criminal due process protections, it should be sustained as a lodestar enhancement. (Resp. at 75-77.) There is neither logic nor case law supporting this suggestion.

The issue here is whether the District Court violated procedural requirements by imposing criminal sanctions without observing Constitutionally-mandated criminal due process protections. If Appellants are correct in this assertion, they have been denied important Constitutional protections that go to the very heart of the guilt-determining process – not the least of which are the District Court's decision to draw adverse inferences from the invocation of Fifth Amendment rights and the refusal to permit Appellants the ability to call and cross-examine witnesses. (Applt. Br. at 44-46 & 49-53.)

Appellee's suggested use of a lodestar to get around a violation of Constitutional rights relegates the violation of rights recognized as mandatory in *Hanshaw* to the category of an inconvenience that can be easily evaded. Criminal due process protections exist for a reason. The sanctions imposed by the District Court either are, or are not, criminal in nature. If they are criminal sanctions, as they most certainly are, the case law imposes upon the District Court certain procedural obligations. To pretend that the sanctions were merely enhanced compensatory sanctions is

an unsupportable fiction, and one that renders Constitutional protection illusory and easily evaded.

Appellee cites two cases in support of this request.[5]  Both cases involve the application of a lodestar to an award of attorneys' fees pursuant to a statutory provision.  Appellee cites no cases involving a lodestar as part of a sanction award – particularly where the lodestar is intended to cover-up the deprivation of Constitutional rights.[6]

### D.    Because of the Procedural Posture of this Case, Appellee's Request that the Court Award the Compensatory Portion of Its Sanctions Is Improper.

Citing to *Hanshaw*, as a last resort, Appellee appears to suggest that, if the Court finds that the District Court improperly awarded punitive sanctions, it should at least affirm the compensatory portion of the sanctions award.  (Resp. at 50-51.)  However, a comparison of the procedural posture of the instant case with that of *Hanshaw* demonstrates that it is neither fair,

---

[5] Appellee relies upon *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) and *Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir. 1988).  (Resp. at 75.)

[6] Appellants almost hesitate to point out (lest it detract from the truly objectionable nature of the suggested use of a lodestar in this matter) that there has been no fact-finding by the District Court necessary to support a lodestar, and it is not the job of an Appellate Court to conduct initial fact finding.  *United States v. Searcy*, 284 F.3d 938, 943 (8th Cir. 2002).

nor even possible, to accurately determine the compensatory portion of the sanctions at issue.

*Hanshaw* involved a dispute between two brothers, which resulted in the appointment of a receiver to oversee the dissolution of the brothers' partnership. During the litigation, the District Court found that one of the brothers had attempted to bribe the receiver. The District Court, pursuant to its inherent authority, imposed a $500,000 punitive penalty on that brother, payable to the United States, and a $200,000 surcharge payable to the other brother to compensate him for expenses incurred as a result of the bribe.

On appeal, this Court reversed the $500,000 sanction, holding that the $500,000 was a penalty, which required the District Court to observe the criminal due process safeguards. However, the Court allowed the $200,000 surcharge after finding that it was entirely compensatory.

The instant case is unlike *Hanshaw* in at least two important respects. First, unlike the instant case, there is no indication that the District Court in *Hanshaw* threatened incarceration in its show-cause order. The District Court's threat of incarceration as a potential sanction (ER11) presented Appellants with the Hobson's choice of either waiving their Fifth Amendment rights or foregoing the presentation of testimony that would have demonstrated that none of the individual Appellants has an ownership

interest in either AF Holdings or Ingenuity 13 and would have clarified the degree of autonomy that Gibbs exercised in his role as counsel of record in each of the five consolidated cases.

The District Court then exacerbated the prejudice resulting from its threat of incarceration by further punishing Appellants for exercising their Fifth Amendment rights by denying Appellants the ability to call witnesses at the April 2, 2013 Hearing.  (ER306-ER319.)  Particularly prejudicial was the District Court's denial of the Appellants' ability to call Mark Lutz, who had consistently been identified as the actual manager of AF Holdings and Ingenuity13 throughout the proceedings.[7]  (ER184, ER265 & ER310.)  The combined result of these two actions by the District Court was to deprive Appellants of the ability to demonstrate that none of the individual Appellants had any ownership interest in Ingenuity 13 or AF Holdings. Such evidence was relevant to both the justification for (or lack thereof), and amount of, sanctions.

Second, and equally important, in *Hanshaw* there was no contention that the compensatory sanction was miscalculated.   244 F.3d at 1142. However, in the instant case, Appellants contend that the District Court committed error in the manner in which it computed compensatory damages

---

[7] Indeed, the District Court's March 5, 2013 Order to Appear identified Lutz as the "CEO of AF Holdings LLC and Ingenuity 13 LLC."  (ER14.)

by including attorneys' fees incurred by Appellee in pursuing the sanctions at issue. (Applt. Br. at 53-58.) Thus, if this Court agrees with Appellants' argument, it will be necessary to recalculate the compensable attorneys' fees by excluding non-compensable fees. That determination will require a re-examination of the record on appeal and a hearing to determine whether the number of hours and hourly rate claimed by Appellee's counsel are reasonable. Such a hearing has never been conducted; and, it is not the job of an Appellate Court to make initial fact-finding.[8]

For these reasons, it would be both prejudicial and procedurally improper to merely award Appellee the portion of the sanctions award that the District Court errantly found to represent Appellee's actual attorneys' fees.

## II. IN ATTEMPTING TO DEFEND THE DISTRICT COURT'S EXTENSION OF ITS INHERENT AUTHORITY TO THE INDIVIDUAL APPELLANTS, APPELLEE *COMPLETELY AND TOTALLY* MISSTATES THE HOLDING IN *HELMAC*.

Appellants assert that, under the widely-applied two-part test developed in *Helmac Products Corp. v. Roth Plastics Corp.*, 150 F.R.D.563, 565-66 (E.D. Mich. 1993), the District Court exceeded the scope of its

---

[8] It should be noted that, in *Hanshaw*, this Court was not forced to split a punitive sanction into its punitive and compensatory components. Unlike the instant case, in *Hanshaw*, the District Court imposed separate punitive and compensatory sanctions.

inherent authority by imposing sanctions on the individual Appellants. (Applt. Br. at 29-34.)

Appellee neither disputes the wide acceptance of the *Helmac* test nor cites contrary case law. (*See* Resp. at 53.) Nonetheless, Appellee argues that the test developed in *Helmac* is limited to cases in which the sanctioned party is not subject to the court's personal jurisdiction. (Resp. at 53-54.) Beyond that, Appellee accuses Appellants of glossing over the two-part test itself and skipping to the *Helmac* court's ultimate conclusion as to the persons who are subject to a court's inherent authority. (*Id.* at 54.)

With total, and genuine, respect for Appellee's counsel, their description of the limitations on the *Helmac* test is contradicted by *Helmac* itself and is unrecognized in the subsequent decisions that have applied the *Helmac* test. Their contention that Appellants have "misrepresented" the test is absolutely inaccurate.

### A. *Helmac* Is Not Limited to Cases in which the Sanctioned Party Is Beyond the Court's Personal Jurisdiction.

The very wording of *Helmac* contradicts Appellee's assertion that the Court's two-part test only applies where the sanctioned party is not subject to the personal jurisdiction of the court applying the sanction. (Resp. at 51-53.) The Court in Helmac described the issue as follows:

16

    I.   DOES *CHAMBERS v. NASCO* PROVIDE AUTHORITY FOR THE COURT TO USE ITS INHERENT POWER TO SANCTION AN INDIVIDUAL WHO, WHILE NOT A PARTY NOR SUBJECT TO COURT ORDER, DESTROYED DOCUMENTS IN A LAWSUIT IN WHICH HE HAD A SUBSTANTIAL INTEREST IN THE OUTCOME AND IN WHICH HE HAD SUBSTANTIALLY PARTICIPATED?

150 F.R.D. at 564.

Neither this language, nor any other portion of the decision, indicates that the *Helmac* test was limited to instances where the sanctioned party was beyond the court's personal jurisdiction.

The lack of any relationship between the *Helmac* test and personal jurisdiction is specifically demonstrated elsewhere in the decision.  Roth, the sanctioned party, argued that he was not subject to the court's inherent authority because he was not subject to the court's compulsory process.  150 F.R.D. at 168.  The Court summarily rejected that argument, stating that the Supreme Court's earlier decision in *Chambers v. Nasco*, Inc., 501 U.S. 32 (1991) had already established that a court's inherent authority extended to persons who were not subject to compulsory process.   150 F.R.D. at 569. Thus, the test in *Helmac* had nothing whatsoever to do with whether the sanctioned party was subject to personal jurisdiction.

Courts that have applied the *Helmac* test had done so in cases in which the issue of personal jurisdiction has never arisen.  In *United States v.*

*Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.), the Court applied the *Helmac* test to determine whether a non-party who had disrupted the litigation was subject to the Court's inherent authority. There was no discussion of personal jurisdiction. Moreover, the sanctioned party was a resident of Virginia (2013 U.S. Dist. LEXIS 133148 at *8) and, therefore, was clearly subject to the Eastern Virginia District Court's personal jurisdiction. *See also Anz Advanced Techs., LLC v. Bush Hog*, LLC, 2012 U.S. Dist. LEXIS 29534 (S.D. Ala.) at *34 (applying the *Helmac* test to plaintiff's lead counsel who had appeared before the court); *Bartos v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.) at *18 (applying *Helmac* test to two non-party state employees of the same state as that of the District Court).

In each of the cases cited in the prior paragraph, the District Court applied the *Helmac* test to non-parties that were clearly subject to the Court's personal jurisdiction. These cases were cited in Appellants' Opening Brief (Applt. Br. at 31). Appellee makes no attempt to discuss, much less distinguish, these cases. Even more important, Appellee cannot cite a single case which states that the *Helmac* test is limited to persons or entities who are not subject to the court's personal jurisdiction. There is absolutely no support for this proposition.

**B.    Under the *Helmac* Test, the Court's Inherent Authority Does Not Extend to the Individual Appellants.**

As noted above, Appellee takes Appellants to task for allegedly misrepresenting the *Helmac* test.  (Resp. at 54.)  Appellee's accusation is puzzling.  Appellants quote *Helmac* as stating that the court held that its

> "inherent power to sanction [is limited] to those individuals [who] were either (1) parties, (2) subject to a court order, or (3) real parties in interest."  150 F.R.D. at 568.

(Applt. Br. at 29-30.)

Appellee claims that Appellants skipped to this conclusion, without stating the two-part test itself.  To mollify Appellees, the full quote is as follows:

> To be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered. This test will effectively limit the scope of the Court's inherent power to sanction to those individuals were either (1) parties, (2) subject to a court order, or (3) real parties in interest.

150 F.R.D. at 568.

Thus, in order for a non-party to be subject to the District Court's inherent authority, the party must both (a) have a substantial interest in the outcome of the litigation *and* (b) substantially participate in the proceedings.

The District Court's only indication that Steele and Hansmeier participated in the proceedings was the testimony of Gibbs, who Appellants

19

were not permitted to cross-examine.   (Applt. Br. at 16-17 & 49-51.)
Further, there was absolutely no testimony indicating that Duffy played any
role at all in the consolidated cases.  (ER264 & ER297.)

Equally important, there is absolutely no evidence in the record on
appeal that any of the individual Appellants had a financial interest in either
AF Holdings or in Ingenuity 13.  (*See* Applt. Br. at 33.)  This is graphically
demonstrated by the fact that the District Court, in asserting that Appellants
are the *de facto* owners of AF Holdings and Ingenuity 13, did not, and
cannot, cite to a single piece of evidence to back up that assertion.  (ER21 &
ER22.)

If further demonstration of a lack of evidence is needed, Appellee
willingly provides it in his Response.  Asserting that Appellants should be
sanctioned for claiming that there is no evidence in the appellate record that
the individual Appellants have an ownership interest in AF Holdings or
Ingenuity 13 (Resp. at 55), Appellee cites:   (1) mystery  documents
submitted to the District Court by Gibbs six months after the May 6 Order
(Resp. at 56); (2) a letter sent to the Florida bar by an attorney representing
Steele (*id.* at 55-56); and (3) an email exchange between other counsel and
opposing counsel in a proceeding in Georgia (*id.* at 56).

20

Gibbs' mystery documents purport to show the operating results of a law firm. (Resp. at 56.) These documents were submitted to the District Court six months after the Sanctions Order had been appealed (see *infra* at 30) as part of Gibbs' post-Appeal Motion to be released from the Sanctions Order. Documents submitted to the District Court after a Notice of Appeal has been filed are not part of the record on appeal. *Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1077 (9th Cir. 1988).

Beyond that fatal flaw, the documents, even if taken at face value, do not show an ownership interest in anything by the individual Appellants. All that the documents purport to show are the revenues and expenses of a law firm. (Resp. at 56; Doe Supp. ER904-Doe Supp. ER919.) Nothing in these documents suggest that any of these individual owned any part of AF Holdings or Ingenuity 13.

Equally important, these documents are inadmissible. None of the documents have ever been authenticated and are of unknown origin. (Doe Supp. ER904-Doe Supp. ER919.) Gibbs did not claim to know who created the documents, how they were created, or even if they are complete.

Appellee also relies upon a letter sent to the Florida bar by Steele's counsel. (Resp. at 55-56.) There is no foundation for the letter, without which, the letter is inadmissible. Much more important, the letter is utterly

irrelevant. The letter does not state, or even imply, that Steele, or any of the individual Appellants, has an ownership interest in either AF Holdings or Ingenuity 13. (Doe Supp. ER730.)

However, Appellee's reliance on an email exchange involving settlement negotiations by AF Holdings' counsel, Jacques Nazaire, in a Georgia proceeding is particularly objectionable. In the email exchange, Nazaire states that Steele has an "interest" in AF Holdings. (Doe Supp. ER745.) The word "interest", of course, has many different meanings. Appellee does not disclose to this Court that Nazaire filed an affidavit with the District Court in the instant case in which he made plain his meaning:

> I have no reason to believe that Mr. John Steele has any ownership interest in any client I have ever represented.
>
> Any statement I may have previously made about John Steele having an interest in AF Holdings was not based on my personal knowledge.

(Applt. Supp. ER4.)

In summary, Appellants reiterate that there is absolutely no document or testimony in the record on appeal that supports the District Court's and Appellee's assertion that any of the individual Appellants had a financial interest in AF Holdings or Ingenuity 13. Appellants further emphasize that Mark Lutz was not allowed to testify at the April 2, 2013 hearing (ER306-ER319) even though he: was consistently identified throughout the

proceedings as these companies' manger (ER14, ER184 & ER265); had specifically been identified to the District Court as "present" (ER310); and was the person best suited to provide testimony on this issue.

## III. APPELLEE'S REQUEST FOR FEES INCURRED IN PURSUING SANCTIONS AND IN DEFENDING SANCTIONS ON APPEAL WOULD REQUIRE THIS COURT TO LITERALLY RE-WRITE ITS PRIOR HOLDINGS.

As stated in Appellants' Opening Brief, this Court has previously held that a District Court, under its inherent authority, cannot award sanctions that include attorneys' fees incurred in pursuing sanctions or defending a sanctions award on appeal. (*See* Applt. Br. at 53-58, citing *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d 456, 466-67 (9th Cir. 2010) and *Lockary v. Kayfetz*, 974 F.2d 1166, 1177-78 (9th Cir. 1992)). Under these cases, it was clear error for the District Court to award Appellee attorneys' fees incurred in pursuing their sanctions or in defending those sanctions in this appeal.

Appellee takes issue with Appellants' reliance on *Orange Blossom*. Specifically, Appellee: suggests that the case ignored amendments to Rule 11 (Resp. at 57); asserts that the case has been criticized by other courts (*id.* at 57); claims that the case should be limited to issues involving Section 303

23

of the Bankruptcy Code (*id.* at 58); and, asks this Court to distinguish the case (from the instant case) on the basis of the conduct at issue (*id.* at 58-59).

Appellee implies, somewhat obliquely, that *Orange Blossom* was badly reasoned, stating that the decision relied upon this Court's earlier decision in *Lockary*, despite the 1993 amendments to Rule 11.  (Resp. at 57.)  That characterization is somewhat misleading.

*Orange Blossom* acknowledged that the portion of *Lockary* dealing with Rule 11 sanctions was overruled by the 1993 amendments.  However, the Court held that the limitation stated in *Orange Blossom* regarding the types of sanctions that may be imposed under a court's inherent authority were unaffected by the 1993 amendments to Rule 11.  *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d at 467, n.6.

Appellee's assertion that *Orange Blossom* was critiqued in *Grine v. Chambers*, 439 B.R. 461 (Bankr. N.D. Ohio 2010) is also misleading. (Resp. at 57.)  The opinion of the Bankruptcy Court for the Northern District of Ohio is, of course, only relevant to the extent that this Court finds its reasoning to be persuasive.  As Appellee candidly states, the critique did not relate to the issue before this Court:  the type of sanctions that a court can impose under its inherent authority.    Rather, it dealt with the *Orange*

*Blossom* court's application of Bankruptcy Code § 303(i).  *Grine v. Chambers*, 439 B.R. at 470.  Neither the critique in *Grine* nor the case itself had absolutely anything to do with the extent of a court's inherent authority.  To the extent that it is even relevant, nothing in *Grine* can be read as a criticism of *Orange Blossom's* discussion of the type of sanctions that a court can award under its inherent authority.

Appellee's attempt to limit the holding in *Orange Blossom* to cases involving Section 303 of the Bankruptcy Code (Resp. at 58) suffers from a fatal flaw.  It is utterly illogical.  Appellee notes that the decision in *Orange Blossom* does not cite or refer to the Supreme Court's decisions in *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) or *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923).  (Resp. at 58.)  Because Appellee considers these decisions to be seminal cases regarding a court's inherent authority, he contends that the lack of citation to these cases implies that *Orange Blossom* was only intended to apply to cases involving Section 303 of the Bankruptcy Code.  (Resp. at 58.)

Actually, there is a simpler explanation why *Orange Blossom* did not cite these cases.  Neither case has anything to do with the issue of whether a court, under its inherent authority, can award attorneys' fees incurred in pursuing sanctions or defending sanctions on appeal.  *Chambers* does not

25

discuss or refer to this issue. *Toledo Scale* does not even mention a court's inherent authority.

Further, *Orange Blossom* is not this Court's only, or first, case holding that a court, under its inherent authority cannot award attorneys' fees incurred in pursing sanctions or defending them on appeal. This Court made that determination 18 years earlier in *Lockary v. Kayfetz*, *supra*. *Orange Blossom* merely followed the holding in *Lockary*. Appellee's logic for limiting the holding in *Orange Blossom* (for what it is worth) cannot be applied to *Lockary*, which did discuss *Chambers v. Nasco, Inc., supra*.

Appellee's argument is also contradicted by the very structure of the decision in *Orange Blossom*. The decision has separate sections discussing the type of sanctions that a court may impose under Section 303 of the Bankruptcy Code (608 F.3d at 461-65) and those that may be imposed under the court's inherent authority (608 F.3d at 466-67). The decision, by its very language, is not limited to cases involving Section 303 of the Bankruptcy Code.

Appellee's final salvo is that *Orange Blossom* is distinguishable from the instant case due to the allegedly greater severity of the conduct in the instant case. (Resp. at 58-59.) Appellee misreads *Orange Blossom*. The holding in that case was that the Bankruptcy Court did not, under its inherent

26

authority, have the ability to award sanctions that include attorneys' fees incurred in pursuing sanctions. Period. There was no analysis of the reason for the sanction or an analysis as to whether the Bankruptcy Court had abused its discretion by awarding a sanction that was disproportionate to the conduct. Nothing in *Orange Blossom* suggests that it is distinguishable on the basis of the conduct sanctioned.

It should also be re-emphasized that, regarding the District Court's imposition of a supersedeas bond sufficient to reimburse Appellee for his appellate attorneys' fees, both *Lockary* and *Orange Blossom* have held that attorneys' fees incurred in defending a sanctions award on appeal are not caused by the sanctioned conduct and are, therefore, not recoverable as sanctions. (Applt. Br. at 57-58.) While this holding is both cited and quoted in Appellants' Opening Brief, Appellee makes no attempt to address this holding.

## IV. APPELLEE'S ADDITIONAL FACTUAL ASSERTIONS HAVE NO RELEVANCE TO THIS CASE AND ARE LARGELY UNSUPPORTED BY THE RECORD ON APPEAL.

After acknowledging that Appellants' Statement of Facts is "technically accurate in most respects" (Resp. at 13), Appellee then devotes the next 30 pages of his Response to a litany of sundry accusations. (Resp. at 12-43.)

27

Because Appellee's additional factual assertions represent such a large portion of his Response, it is incumbent upon Appellants to comment on Appellee's assertions.  The vast majority of Appellee's assertions, while inflammatory, are not based in fact and are completely unrelated to the District Court's reasons for imposing sanctions.

### A.    Appellee's Additional Assertions Are Unrelated to Either the Alleged Reasons for the Sanctions Imposed Or to the Issues in this Appeal.

The vast majority of Appellee's factual statements arise from his personal view of copyright enforcement as "plundering the citizenry" (Resp. at 56), and in particular his criticism of copyright holders for:  filing a large number of copyright infringement cases to protect their copyrights (*id.* at 14-15); and not pursuing those cases that were not economically viable to pursue (*id.* at 14-16).  While these accusations echo the District Court's indignation toward Appellants (ER19-ER29), they were not the bases for sanctions.  Appellants were sanctioned for the alleged indirect role they played in Gibbs' so-called misrepresentations and discovery order violation. (ER24-ER27.)

In point of fact, Appellee's accusations could not have been the bases for sanctions.  Plaintiffs either do or do not have a protectable interest in their adult films; and, neither the District Court nor Appellee denies that

Plaintiffs hold valid, protectable copyrights. Further, so long as a plaintiff asserts a valid claim, there is no authority allowing a court to impose sanctions for voluntarily dismissing a valid claim because the cost of discovery will exceed the compensatory damages.

Of equal importance, these additional accusations have nothing whatsoever to do with the issues on appeal. Appellee's accusations cannot justify the District Court's denial of criminal due process protections; the over-extension of the District Court's inherent authority to the individual Appellants; or the District Court's allowance of attorneys' fees incurred in pursuing sanctions and defending them on appeal. Unless this Court intends to abandon its prior holdings, Appellee's accusations are irrelevant to these issues on appeal.

**B. Appellee's Most Egregious Assertions Are Unsupported by Valid Citations to the Record on Appeal.**

Appellee's most egregious assertions are fundamentally flawed. In support of his accusations that AF Holdings and Ingenuity 13 are merely "shell companies", that the "shell companies" are a shield to support "dubious" copyright infringement lawsuits and that the "shell companies" are not "actual, known pornography producers", Appellee literally cites to

nothing.  (Resp. at 15-16.)  Nor does he attempt to link these assertions to any of the conduct that was sanctioned by the District Court.

When Appellee does cite to the record, it is predominantly to his counsel's own oral and written presentations.  (*See* Resp. at 14-15, 26 & 30.)  Indeed, Appellee parenthetically commends his counsel's declaration "on Prenda's history" to be well "worth reviewing in its entirety," as if his counsel's take on "Prenda's history" has any relevance to the issues before this Court.  (Resp. at 15.)

When Appellee does cite to items other than his counsel's written and oral submissions, these citations are largely to items that are outside the record on appeal.  Appellee, for example, devotes nearly eight pages of his Statement of the Case to discussing post-Sanctions Order events, including his counsel's e-mail exchanges with Appellants' counsel, not to mention the mystery documents submitted by Gibbs over six months after the Sanctions Order issued.  (Resp. at 35-43.)  None of this is probative to the issues on appeal.

In short, Appellee's Statement of the Case does not reflect the reality of the case below, but instead what Appellee wishes it was.  Each of

Appellee's most egregious accusations is fundamentally flawed.[9]  None of

them are relevant to this appeal.

## CONCLUSION

The record on appeal and the applicable case law leaves no doubt that

the District Court:   did not observe mandatory criminal due process

procedures; improperly imposed its inherent authority over the individual

Appellants; improperly awarded attorney's incurred in pursuing sanctions

and,  required Appellants to post an excessive supersedeas bond designed to

guarantee Appellee attorneys' fees incurred in this appeal.

---

[9] An exhaustive rebuttal of Appellee's accusations is far beyond the scope of
this Reply. However, a single example well illustrates the liberties taken by
Appellee in his Statement of the Case. Under the subheading, "More
Information About Yet Another Prenda Straw Man", Appellee accuses
"Prenda" of usurping the identity of an individual named Allan Mooney in a
totally unrelated case. (Resp. at 29-30.) For such an extreme accusation,
Appellee's "evidence" consists of little more than citations to the briefing
submitted in that case and a newspaper article. Appellee conspicuously
avoids mention of the fact that *his own counsel's* arguments in that case
were considered and *rejected* by the court to which they were presented.
Further, the so-called victim of the alleged scheme repudiated Appellee's
counsel's narrative and affirmed his role in the case.

For these reasons, Appellants ask this Court to vacate the Sanctions and Bond Orders; require the bond proceeds to be returned to Appellants; dismiss the individual Appellants; and, if a remand is deemed to be necessary, to direct that it be assigned to a different District Court Judge.

Dated:  February 25, 2014            Respectfully submitted,

VOELKER LITIGATION GROUP
Daniel J. Voelker, Esq.


By:  /s/Daniel J. Voelker_____
Daniel J. Voelker
Attorney for Appellants:  Ingenuity 13, LLC;  AF Holdings, LLC; Prenda Law, Inc.; Paul Duffy, Esq.; Paul Hansmeier, Esq.; and John Steele, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that, in accordance with Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, Appellants' Opening Brief is proportionally spaced and has a typeface of 14 points.  According to the word-count feature in Microsoft Word software used to prepare this brief, it contains 6,861 words, including footnotes, and is double spaced.  This brief, therefore, complies with the 7,000 word type-volume limit established by Fed. R. App. P. 32(a)(7)(B).

Dated:  February 25, 2014            Respectfully submitted,

VOELKER LITIGATION GROUP
Daniel J. Voelker, Esq.


By:  /s/Daniel J. Voelker_____
Daniel J. Voelker
Attorney for Appellants:  Ingenuity 13,
LLC;  AF Holdings, LLC; Prenda Law, Inc.;
Paul Duffy, Esq.; Paul Hansmeier, Esq.; and
John Steele, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 25, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  February 25, 2014          /s/Daniel J. Voelker_____
                                    Daniel J. Voelker

**Nos. 13-55859, 13-55871, 13-55880, 13-55881, 13-55882, 13-55883,
13-55884 & 13-56028**

————————————————————————

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

INGENUITY 13, LLC,

Plaintiff-Appellant,

v.

John Doe,

Defendant-Appellee,

v.

AF HOLDINGS, LLC; PRENDA LAW, INC.; PAUL DUFFY, ESQ.; PAUL
HANSMEIER, ESQ.; JOHN STEELE, ESQ.; and BRETT GIBBS, ESQ.,

Additional Appellants.

————————————————————————

**APPELLANTS' SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME 1**

————————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
U.S.D.C. No. 2:12-cv-08333-ODW-JC
THE HONORABLE OTIS D. WRIGHT II

————————————————————————

DANIEL J. VOELKER, ESQ.
Voelker Litigation Group
311 West Superior Street
Suite 500
Chicago, Illinois 60654
312-870-5430
*Attorney for Plaintiff-Appellant and
Certain Additional Appellants.*

**INDEX TO APPELLANTS' SUPPLEMENTAL EXCEPTS OF RECORD**

**Volume 1**                                                                                    **Page No.**

Declaration of Timothy Halloran, attaching Declaration of Jacques Nazaire,
    as Exhibit A, 04-18-2014 ................................................................................. Supp. ER001

i

Timothy J. Halloran - 104498
Thomas P. Mazzucco - 139758
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA 94108-5530
Tel: (415) 788-1900
Fax: (415) 393-8087

Specially Appearing for
JOHN STEELE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

INGENUITY 13 LLC,

    Plaintiff,

v.

JOHN DOE,

    Defendants.

Case No.: CV-12-8333- ODW(JCx)

**DECLARATION OF
TIMOTHY HALLORAN
IN RESPONSE TO PUTATIVE
JOHN DOE'S REPLY BRIEF**

Judge:     Hon. Otis D. Wright, II
Courtroom:  11
Date:      April 2, 2013
Time:     10:00 A.M.

Complaint Filed:  September 27, 2012
Trial Date:     None

I, Timothy J. Halloran, declare that:

    1.    I am an attorney duly licensed to practice in all courts of the State of California, and am a Senior Shareholder with the law firm of Murphy, Pearson, Bradley & Feeney, PC, attorneys of record for specially appearing John Steele herein. I have personal knowledge of the information set forth herein below, unless noted as based on information and belief, and if called upon to testify, I could and would competently testify thereto.

    2.    Upon information and belief, attached as Exhibit "A" is a true and correct copy of a notarized affidavit by Jacques Nazaire, dated April 18, 2013.    **Applnt. SUPP. ER1**

- 1 -

1        I declare under penalty of perjury under the laws of the State of California that the foregoing is

2  true and correct and that this Declaration was executed on this 18th day of April 2013, in San

3  Francisco, California.

4  Dated: April 18, 2013

5

6                       By /s/ Timothy J. Halloran

7                        Timothy J. Halloran

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                **Applnt. SUPP. ER2**

28

- 2 -

DECLARATION OF TIMOTHY HALLORAN
IN RESPONSE TO PUTATIVE JOHN DOE'S
REPLY BRIEF

Case No.: CV-12-8333- ODW(JCx)

# EXHIBIT A

**Applnt. SUPP. ER3**

I, Jacques Nazaire, under the penalty of perjury, declare and state:

1. I am over eighteen years of age and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge and, if called, would be prepared to testify as follows.

2. I am attorney licensed to practice law in the State of Georgia.

3. I have represented AF Holdings LLC in several matters in Georgia.

4. On the occasion when I needed to speak with a representative for AF Holdings LLC, my point of contact was Brett Gibbs, who I understood to be the lead counsel for all the AF Holdings LLC cases nationwide.

5. The only person at AF Holdings LLC that I have spoken to is Mark Lutz, who I understand is the CEO of AF Holdings LLC.

6. I have spoken infrequently to Mr. John Steele over the past years. He has never indicated that he has an ownership interest in any of the clients that I have represented in Georgia, including AF Holdings LLC.

7. I have no reason to believe that Mr. John Steele has any ownership interest in any client I have ever represented.

8. Any statement I may have previously made about John Steele having an interest in AF Holdings was not based on my personal knowledge.

_____
Jacques Nazaire

Subscribed and sworn to before me, this 18th day of April, 2013

_____
_____, NOTARY PUBLIC

Name of Notary

My commission expires: _Jan 24_, 20_16_.

CHRIS VADNAIS
NOTARY PUBLIC
Cobb County
State of Georgia
Comm. Expires Jan. 24, 2016

**Applnt. SUPP. ER4**